UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NELS JOHNSON, a single person,<br><br>    Plaintiff,<br><br>    v.<br><br>GEORGIA-PACIFIC CORPORATION,<br>successor in interest to CROWN ZELLERBACH;<br>et al,<br><br>    Defendants. | CASE NO. C04-1463RSM<br><br>ORDER ON MOTIONS FOR<br> SUMMARY JUDGMENT AND<br> ON MOTION FOR LEAVE TO<br>AMEND |

This matter is before the Court for consideration of the parties' cross-motions for summary judgment, and plaintiff's motion for leave to file an amended complaint. The Court heard oral argument on July 14, 2005, and has fully considered the parties' arguments and the submitted exhibits. For the reasons set forth below, the Court denies defendants' motion for summary judgment, grants in part and denies in part plaintiff's motion for summary judgment, and grants plaintiff's motion for leave to file an amended complaint.

DISCUSSION

Plaintiff Nels Johnson filed this action pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that he has been improperly denied credit toward his retirement benefits for ten of the fifteen years he worked prior to 1947. He has also asserted state law claims of breach of contract and violation of the state Consumer Protection Act. Defendants have moved for summary judgment on the basis that the calculation of his benefits has been proper, and plaintiff has opposed the motion, and cross-moved for summary judgment.

ORDER - 1

The following facts are not in dispute. Plaintiff began working as a rigger at the Crown Zellerbach paper mill in Port Angeles in 1932. (Georgia-Pacific is named as the successor in interest to Crown Zellerbach). In July of 1947, he requested a short leave of absence to help his brother with commercial fishing. The request was denied, so Mr. Johnson quit and went fishing. He was re-hired four months later, in November 1947, and continued to work until his retirement in 1976. It is the treatment of his four-month "break in service" under his retirement plan that is at issue in this case: since 1976 and continuing to this day, plaintiff's retirement amount has been calculated on the basis of the 29 years from 1947 to 1976, plus five of the fifteen years from 1932 to 1947. Plaintiff claims that he has been improperly denied credit for the other ten years of service prior to 1947. Defendants contend that this calculation is proper under the "break in service" rules in the pension plan.

Defendants have moved for summary judgment on two bases: (1) plaintiff's claims are barred by both the doctrine of laches and by the applicable statute of limitations; and (2) the language of the relevant pension plan clearly specifies the break in service rules, which the plan administrator properly followed in calculating plaintiff's benefits. Defendants also assert that plaintiff's state law claims are preempted by ERISA. Plaintiff has not responded to that argument, so it is deemed conceded, and the state law claims shall be dismissed.

In addition to opposing defendants' motion, plaintiff has incorporated two motions into his response: a motion to strike the 1982 and 1999 plan documents, and a motion for sanctions for "misrepresentation to the Court and failure to cite direct contrary authority." Plaintiff's Opposition, p. 4. These motions are both DENIED. Defendants' two arguments for summary judgment will be addressed in turn, followed by a discussion of plaintiff's motion for partial summary judgment.

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, it any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotrex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party satisfies this

ORDER - 2

burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. F.R.Civ. P. 56(e). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is not the court's function at the summary judgment stage to determine credibility or to decide the truth of the matter. Id. Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

I. Defendants' Motion for Summary Judgment.

A. Statute of Limitations.

There is no specific statute of limitations governing claims for benefits under ERISA. Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Insurance Program, 222 F. 3d 643, 646 (9th Cir. 2000) The Court therefore looks to the most analogous state statute of limitations, which the parties agree is the six-year limitation period for contract disputes. Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, 827 F. 2d 1324 (9th Cir. 1987). What they cannot agree upon is the time when the statute began to run.

An ERISA cause of action begins to accrue either at the time benefits are actually denied, or when the insured has reason to know that the claim has been denied. Wetzel, 222 F. 3d at 649. Defendants argue that plaintiff knew his claim for the additional ten years' service had been denied in the late 1970's or early 1980's, when he by his own admission wrote letters to the pension plan administrator regarding his benefit amount. Deposition of Nels Johnson, p. 27. Although defendants characterize these letters as plaintiff's first administrative appeal, there is no basis for finding it so. Neither plaintiff nor the plan administrators retained copies of the letters or the responses, and they do not appear in the record. Thus the Court cannot determine if they constituted adequate notice that his claim for benefits had been denied. A plan participant whose claim has been denied must be given the specific reasons for the denial in language calculated to be understood by the participant. 29 U.S.C. § 1133(1). Further, the plan must afford the participant a reasonable opportunity for a full and fair review of the decision denying the claim. § 1133(2). In the absence of any evidence that defendants advised plaintiff that the decision on his benefits was a final one, and afforded him a right of appeal, the Court declines to find that the letters written in the late 1970's triggered the running of the statute of

ORDER - 3

limitations on this claim.  Schendel v. Pipe Trades District Council No. 36 Pension Plan, et al., 880 F. Supp. 710, 714 (N.D.Cal. 1995).

According to evidence in the record, plaintiff requested a review of the calculation of his benefits under the plan in late 2000, and received a series of responses culminating in a letter from Ellison Siple, benefits coordinator for the Pension Review Committee.  Declaration of Daniel Thompson, Exhibit 17.  This letter, dated September 10, 2001, was designated as a final decision of the Committee, binding on all parties.  Id.  This was a clear statement of denial, sufficient to start the running of the statute of limitations.  The Court thus finds that plaintiff's lawsuit, filed in 2004, is well within the six-year limitations period.   The Court declines to apply the doctrine of laches to this claim.

B.  The Applicable Plan and its Break in Service Rule.

The original 1945 Crown Zellerbach retirement plan was amended or restated a number of times.  An earlier dispute, over which plan controls plaintiff's benefits, was resolved at oral argument; defendants agreed with plaintiff that the plan in effect at the time of plaintiff's retirement controls his entitlement to benefits.  Grosz-Saloman v. Paul Revere Life Insurance Co., 237 F. 3d 1154, 1159-60 (9th Cir. 2001); Geiger v. Hartford Life Insurance, 348 F. Supp. 2d 1097, 1106-8 (E.D.Cal. 2004).  Plaintiff retired on July 1, 1976, so the plan in effect at that time was the 1973 plan, as modified by the 1976 amendments.  It is the language of those amendments, and their applicability to plaintiff, that is the crucial issue here.

The 1973 plan contained the following language with respect to breaks in service:

> If an Employee whose continuous Employment is broken subsequently resumes Employment, his Accredited Service accrued prior to such break in continuous Employment shall be reinstated up to a maximum of five (5) years. . . .

Declaration of Robert Carey, Exhibit F, p. 5.  This is the break in service rule that was applied to plaintiff.  It is his contention that this was improper, because following the passage of ERISA certain  1976 amendments eliminated the harsh break in service rule, and replaced it with the ERISA "Rule of Parity."  This rule provides that if an employee's break in service is *less* than the service credited prior to the break, the entire service will be reinstated.  Conversely, if the break is *longer* than the prior service, none of the prior service will be credited.  Since plaintiff's break in service was only four months, and his prior service was fifteen years, such a change would be favorable to him.  The dispositive issue in this case, then, is whether the 1976 amendments to the plan operated so as to effect a change in the break in service

ORDER - 4

1   rule for plaintiff.

2       The 1973 plan had five parts, or schedules, A through E.  Plaintiff, as a union employee covered
3   by a labor agreement with the Association of Western Pulp and Paper Workers ("AWPPW"), was a
4   Schedule B employee.  Declaration of Daniel Thompson, Exhibit 4.  The 1973 plan was amended
5   effective January 1, 1976 to bring it into line with ERISA requirements, but no copy of the actual
6   amendments appears in the record.  Summaries of the amendments, in the form of letters to the plan
7   administrators, are attached to the Declaration of Daniel Thompson at Exhibit 5 (Part A), Exhibit 6 (Part
8   B), Exhibit 7 (Part D), and Exhibit E (Part E).  As described in these letters, the amendments to Parts A,
9   D, and E replaced the former break in service rule with the Rule of Parity.  The letter describing
10  amendments to Part B, however, is different.  Initially, it explains that the amendments are due to
11  "changes as a result of 1975 contract negotiations," rather than "changes as a result of ERISA
12  requirements" as stated on the letters regarding Parts A, D, and E.  Moreover, unlike the amendment
13  letters for Parts A, D, and E, the Part B letter is silent as to the break in service rule.  The Court noted at
14  oral argument that plaintiff's three-page Plan B copy appears to be incomplete.  Defendant's copy of the
15  Plan B contains the full ten pages, but still lacks the referenced attachments.  Declaration of Robert
16  Carey, Exhibit G.

17      As defendant argues, these letters are simply that; they are not the actual amendments to the
18  1973 plan.  Plaintiff contends that the language referring to union contract negotiations directs the Court
19  to look there for changes to the break in service rule.  The Plan B letter does refer to changes "accepted
20  by the AWPPW negotiating committee and ratified by the union membership October 13, 1975."  There
21  does not appear to be a copy of this ratified agreement anywhere in the file.  Plaintiff has provided a copy
22  of a later "final settlement proposal" to the AWPPW which contains language applicable to Part B of the
23  Crown Zellerbach retirement plan.  Supplemental Declaration of Daniel Thompson, Exhibit 2.  The
24  proposal is dated September 21, 1976—after plaintiff's retirement—but certain provisions are retroactive
25  to January 1, 1976.  Exhibit C to the proposal is a summary of the main provisions applicable to mill
26  workers.  The summary, under the heading "Years of Service," states that as of January 1, 1976,

27      [a]ll years of service count unless lost by the ERISA "Rule of Parity" for breaks in
        service.  This means that employees' service before a break is lost if the break is
28      equal to or longer than service before the break.  Even if service is lost under this rule,

ORDER - 5

up to five years of Crown service is reinstated.

Id., p. 9.

This document raises a strong inference that the 1973 plan's break in service rule was replaced by the ERISA Rule of Parity for Plan B employees, in conformity with the contract negotiations with AWPPW workers. However, as there is no document in the record which actually proves this, there remains an issue of fact as to the content of the 1976 amendments for Plan B employees. Accordingly, defendants' motion for summary judgment on the ERISA claim must be denied.

II. Plaintiff's Motion for Partial Summary Judgment

Plaintiff has requested partial summary judgment on several separate bases. In accordance with the facts and analysis set forth above, the Court finds that summary judgment is appropriate only as to the fact that Nels Johnson retired effective July 1, 1976. As the Court has already determined, there are issues of fact which preclude summary judgment as to whether the 1976 amendments to the 1973 plan eliminated the break in service rule for Plan B employees. These issues, as well as the issues of attorney's fees, interest on past due benefits, and civil penalties for failure to disclose the 1973 plan and amendments, are preserved for trial.

III. Motion for Leave to File an Amended Complaint

Plaintiff has moved to amend the complaint to add a cause of action for breach of fiduciary duty under ERISA, for defendants' failure to disclose the 1976 amendments to the 1973 plan until very recently, during discovery in this case. Defendants characterize this motion as a desperate effort to avoid summary judgment, and assert that amendment to add this claim would be futile. Defendants also contend that they had no duty to provide the 1976 amendments because plaintiff never specifically requested them. This argument is unpersuasive. Plaintiff could not have specifically requested the 1976 amendments, because he was unaware they existed.

F.R.Civ.Proc. 15(a) directs that leave to amend should be freely granted when justice so requires. The four factors to be weighed are undue delay, bad faith, prejudice, and futility. Gabrielson v. Montgomery Ward & Company, 785 F. 2d 762, 765 (9th Cir. 1986).

The Court finds that plaintiff's motion was brought within a reasonable time after learning of the 1976 amendments and their possible effect on plaintiff's case. Plaintiff has not demonstrated bad faith in

ORDER - 6

bringing this claim, and defendants have not shown how they would be actually prejudiced thereby. Finally, amendment is not futile. Defendants' futility argument is based on an assertion that the 1973 plan and 1976 amendments are irrelevant to plaintiff's case. *See*, Defendants' Opposition to Plaintiff's Motion to Amend Complaint, p. 3 n.1. This line of argument was abandoned at oral argument, with defendants' concession that the operative plan in this case is the one in effect on the date of plaintiff's retirement, namely the 1973 plan with the 1976 amendments. Accordingly, the Court grants plaintiff's motion for leave to amend the complaint to add this cause of action.

## CONCLUSION

As set forth more fully above, defendants' motion for summary judgment is GRANTED as to the state law claims, and those are hereby DISMISSED. Defendant's motion for summary judgment on the ERISA claims is DENIED. Plaintiff's cross-motion for partial summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiff's motion for leave to amend the complaint to add a cause of action is GRANTED.

The trial date in this matter was stricken pending a ruling on the summary judgment motions. The parties shall now prepare a revised Joint Status Report advising the Court of their requested schedule for trial preparation, Rule 39.1 mediation, and trial date. The parties shall also state whether, in the interest of expeditious resolution of this matter, the Court should refer this matter for a judicial settlement conference pursuant to Local Rule 39.1(e), in lieu of 39.1(c) mediation. The revised Joint Status Report shall be due August 19, 2005.

DATED this   27   day of   July   , 2005.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 7